

I N T H E

# Court of Appeals of Indiana

Garvin Street Warehouse, LLC and KSAB, LLC,

*Appellants-Plaintiffs*

v.

Bridgeway Insurance Company, Ascot Specialty Insurance Company, Certain Underwriters at Lloyd's of London, Insurance Effected with Ascot Syndicate No. 1414, Certain Subscribing Lloyd's Underwriters, Trisura Specialty Insurance Company, General Security Indemnity Company of Arizona, Western World Insurance Company, and National Fire & Marine Insurance Company,

*Appellees-Defendants*



FILED

Jul 15 2026, 10:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

July 15, 2026

Court of Appeals Case No.
25A-PL-2272

Appeal from the Vanderburgh Superior Court

The Honorable Thomas A. Massey, Judge

**Opinion by Chief Judge Tavitas**
Judge Foley concurs.
Judge Weissmann concurs in result with separate opinion.

**Tavitas, Chief Judge.**

# Case Summary

[1] In this Commercial Court case, Garvin Street Warehouse, LLC, and KSAB, LLC (collectively, "Garvin") appeal the trial court's denial of Garvin's motion for partial summary judgment and the grant of a cross-motion for judgment on the pleadings filed by the defendant insurers ("Insurers").[1] After the sprinkler system at Garvin's warehouse malfunctioned, Garvin attempted to have the system repaired. Before the repairs could be completed, however, the warehouse caught fire and was destroyed. Insurers denied Garvin's claims pursuant to a Protective Safeguards Endorsement ("PSE") of the policy, which required Garvin to notify Insurers of issues with the sprinkler system within forty-eight hours—a requirement Garvin failed to satisfy. Garvin then filed a complaint against Insurers.

---

[1] Insurers include Bridgeway Insurance Company, Ascot Specialty Insurance Company, Certain Underwriters at Lloyd's of London, Insurance Effected with Ascot Syndicate No. 1414, Certain Subscribing Lloyd's Underwriters, Trisura Specialty Insurance Company, General Security Indemnity Company of Arizona, Western World Insurance Company, and National Fire & Marine Insurance Company.

Garvin filed a motion for partial summary judgment, arguing that Insurers were required to demonstrate prejudice due to Garvin's failure to comply with the PSE. In response, Insurers filed a cross-motion for judgment on the pleadings. The trial court found that Insurers were not required to demonstrate prejudice and, thus, denied Garvin's motion for partial summary judgment and granted Insurers' motion for judgment on the pleadings. We affirm the trial court.[2]

## Issue

On appeal, we address the following issues:

> I. Whether the trial court properly denied Garvin's motion for partial summary judgment.
>
> II. Whether the trial court properly granted Insurers' cross-motion for judgment on the pleadings.

## Facts

The facts here are undisputed. Garvin owns a warehouse in Evansville, and Insurers are the primary and excess insurers of the property. On December 23, 2022, a maintenance contractor discovered that one of the twenty risers in Garvin's warehouse sprinkler system was frozen and broken. On December 27, 2022, the contractor met with a sprinkler services company, which was unable

---

[2] We held oral argument on this matter on May 11, 2026. We thank counsel for their presentations.

to complete the repairs at that time. The repairs were rescheduled for January 2, 2023. On December 31, 2022, the warehouse caught fire and was destroyed.[3]

[5]     After Garvin notified Insurers of the fire, Insurers denied the claim because Garvin failed to comply with the PSE portion of the commercial insurance policies, which provided:

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

SCHEDULE

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| All | All | P-1;P-9 |

Describe Any "P-9":
P-1: Automatic Sprinkler System - Failure to maintain warranted condition shall result in the following Cause(s) of Loss being excluded: Fire
P-9: Heat maintained at 55 degrees - Failure to maintain warranted condition shall result in the following Cause(s) of Loss being excluded: Water Damage, Sprinkler Leakage

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. The following is added to the Commercial Property **Conditions**:

**Protective Safeguards**

---

[3] Appellants' Brief states that a "riser" is "a vertical pipe that supplies water to elevated horizontal pipes with sprinkler heads." Appellants' Br. p. 8 n.3. Appellants' Brief further states:

The Amended Complaint refers to the burst pipe as the same as a riser, stating that one of twenty risers froze and broke. Technically, it was a horizontal pipe that froze, which required the riser supplying water to the broken pipe to be shut off. The riser was not the pipe that froze.

Id. at p. 11 n.7.

1.  As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

2.  The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1" Automatic Sprinkler System**, including related supervisory services.

Automatic Sprinkler System means:

a.  Any automatic fire protective or extinguishing system . . . .

\* \* \* \* \*

**"P-9",** the protective system described in the Schedule.

**B.** The following is added to the **Exclusions** section . . .

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

1. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

2.  Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of

sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Appellants' App. Vol. III pp. 45-46 (emphasis in original). It is undisputed that Garvin did not notify Insurers of the issue with the sprinkler system within forty-eight hours as required by the PSE.

[6] In June 2024, Garvin filed a complaint against Insurers for declaratory judgment, breach of contract, and reformation.[4] Garvin alleged that Insurers were required to demonstrate actual prejudice from Garvin's failure to notify them of the issue with the sprinkler system within forty-eight hours. Garvin argued that Insurers were not prejudiced and that, "[e]ven if notice of the riser issue had been provided, the insurers would not have actually done anything differently." Appellants' App. Vol. II p. 82.

[7] In March 2025, Garvin filed a motion for partial summary judgment.[5] Garvin argued that, under *Miller v. Dilts*, 463 N.E.2d 257 (Ind. 1984), Insurers must "prove actual prejudice when policyholders fail to communicate with them and violate the cooperation clause." Appellants' App. Vol. II p. 174. Garvin contended that "[t]he same analysis should apply when determining whether the insurer can properly deny a claim when a policyholder does not notify the insurer within 48 hours that a small portion of the automatic sprinkler system

---

[4] Garvin amended the complaint in February 2025 to correct a party. The policies were attached to the amended complaint as exhibits.

[5] Garvin designated the affidavit of Stewart Klipsch, a member of KSAB, LLC, which owns Garvin Street Warehouse, LLC. The policies were attached to the affidavit.

was temporarily inoperable." *Id.* Garvin argued: "Allowing carriers to deny coverage based on a lack of notice even though they are not prejudiced is simply unjust." *Id.* at 178. Garvin, however, admitted that "Indiana law has never addressed this question head on . . . ." *Id.* at 184.

[8] In response to Garvin's motion for partial summary judgment, Insurers filed a response and a cross-motion for judgment on the pleadings. Insurers argued that Garvin did not comply with the PSE when it failed to provide timely notice of the impairment of the system to Insurers. Insurers argued that the prejudice cases cited by Garvin involved post-loss policy conditions, such as failure to cooperate and failure to provide timely notice of a claim after the insured had incurred a loss, and that these cases have not been applied to pre-loss policy conditions.

[9] After a July 2025 hearing, the trial court entered an order on August 13, 2025, denying Garvin's motion for partial summary judgment and granting Insurers' cross-motion for judgment on the pleadings. The trial court found that Insurers were not required "to show prejudice by [Garvin's] failure to notify before [Insurers] can deny coverage under the Policy." *Id.* at 41. Because Insurers were not required to show that they were prejudiced, Garvin's failure to notify Insurers of the problem with the sprinkler system alone precluded coverage. Garvin now appeals.

## Discussion and Decision

### I. The trial court properly denied Garvin's motion for partial summary judgment.

### A. Standard of Review

Garvin appeals the denial of its motion for partial summary judgment. "We review summary judgment decisions de novo, and Trial Rule 56(C) supplies the framework." *Cave Quarries, Inc. v. Warex LLC*, 240 N.E.3d 681, 684 (Ind. 2024). "The moving party is entitled to summary judgment only if the evidence it designates in support of its motion 'shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 684-85 (quoting Ind. Trial Rule 56(C)). The purpose of summary judgment is to withdraw issues from the jury only when there are no genuine material factual issues for the jury to decide. *Id.* at 685. "Summary judgment is available when the nonmovant **cannot prove** its claim based on the undisputed evidence[.]" *Id.* (emphasis in original).

The summary judgment movant has the initial burden of making a *prima facie* showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Isgrig v. Trs. of Indiana Univ*., 256 N.E.3d 1238, 1244 (Ind. 2025). The burden then shifts to the non-moving party to show the existence of a genuine issue of material fact. *Id*. On appellate review, we "draw all reasonable inferences in favor of the non-moving party." *Wilson v. Anonymous Defendant 1*, 183 N.E.3d 289, 293 (Ind. 2022).

[12] Here, the parties' arguments require that we interpret the language of the insurance policy. "In Indiana, insurance contracts are subject to the same rules of interpretation as other contracts." *Ebert v. Illinois Cas. Co.*, 188 N.E.3d 858, 864 (Ind. 2022). "Ordinarily, we construe ambiguous policy provisions in favor of the insured, especially if the 'provisions limiting coverage are not clearly and plainly expressed.'" *Id.* (quoting *Meridian Mut. Ins. Co. v. Auto-Owners Ins. Co.*, 698 N.E.2d 770, 773 (Ind. 1998)). "On the other hand, we give clear and unambiguous language in a policy its plain and ordinary meaning." *Id.* "A policy is unambiguous if reasonable persons cannot honestly differ as to its meaning." *Id.*

## B. Insurers were not required to show prejudice.

[13] Garvin argues that Insurers were required to show that Insurers were prejudiced by Garvin's failure to comply with the PSE requirements. Protective safeguards endorsements commonly found in insurance policies require an insured to maintain various protective services, such as sprinkler systems, fire alarms, burglar alarms, and watchman services. *Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 580 n.7 (Ind. 2013). Generally, these safeguards are required under policies in exchange for reduced premiums on property damage coverage. *Id.* "An endorsement is ancillary to an insurance policy and it must be read together, construed, and reconciled with the policy to give effect to the whole." *Stevenson v. Hamilton Mut. Ins. Co.*, 672 N.E.2d 467, 473 (Ind. Ct. App. 1996), *trans. denied*.

Proof of prejudice as it relates to notice of pre-loss conditions, such as issues with protective safeguards endorsements, has not been considered by Indiana courts. Indiana cases, however, have extensively discussed the requirement of prejudice to the insurance company in the context of post-loss notice and post-loss cooperation provisions. Post-loss notice provisions require the insured to timely inform the insurance company of claims for insurance coverage and lawsuits against the insured, which "assist the insurance company by giving it an opportunity to make a timely and adequate investigation during its preparation for settlement or trial." *Paint Shuttle, Inc. v. Cont'l Cas. Co.*, 733 N.E.2d 513, 521 (Ind. Ct. App. 2000), *trans. denied*. On the other hand, a post-loss "cooperation clause essentially requires the insured to assist the insurance company in its preparation for settlement or trial." *Id.* "An insured's responsibilities under the cooperation clause of an insurance policy involve attending hearings and trials, assisting in effecting settlement, securing and giving evidence, and obtaining the attendance of witnesses." *Id.*

In *Miller v. Dilts*, 463 N.E.2d 257 (Ind. 1984), our Supreme Court considered three cases involving these post-loss notice provisions. In each case, the insured failed to give prompt notice of accidents or lawsuits, and the Court considered "whether there is a difference between a duty to give prompt notice and a duty to cooperate in an automobile insurance policy." *Id.* at 260.

"[T]he duties to notify and to cooperate are conditions precedent to the insurance company's liability to its insured." *Id.* at 260-61. The *Miller* Court noted that, where an insured fails to comply with an insurance policy's

**cooperation clause**, the insurance company "must show **actual prejudice** from an insured's noncompliance with the policy's cooperation clause before it can avoid liability under the policy." *Id.* at 261 (emphasis added). The issue in *Miller*, however, was whether insurance companies must also show "actual prejudice" where the insured fails to comply with a post-loss notice provision, rather than a post-loss cooperation clause.

[17] The *Miller* Court noted that federal courts have considered the issue in the context of Indiana law and determined that the lack of prompt post-loss notice gives rise to a presumption of prejudice to the insurance company. The Court found the federal decisions "to be sound and well grounded in Indiana law." *Id.* at 263. "[L]ate notice given to an insurer places it in a position that could have been avoided through timely notice, and that the 'most cooperative insured cannot erase this prejudice suffered by the insurer' in situations where the scene of the accident changes, or witnesses move away or have their memories lapse, due to the passage of time." *Id.* at 265 (quoting *Indiana Ins. Co. v. Williams*, 448 N.E.2d 1233, 1238 (Ind. Ct. App. 1983) (Hoffman, J., dissenting), *vacated sub nom.*, *Miller*, 463 N.E.2d 257).

[18] The Court held:

> [T]he notice provisions in insurance policies are not equivalent to the cooperation clauses and do not serve the same objectives. Failure to cooperate can come about in many ways, some of which may be technical and inconsequential, thereby resulting in no prejudice to the insurance company. **An insurance company must show actual prejudice from an insured's noncompliance with the policy's cooperation clause before it can avoid**

**liability under the policy**. . . . The same cannot be said of the notice provision because, as Judge Hoffman stated, "[n]otice is a threshold requirement which must be met before an insurer is even aware that a controversy or matter exists which requires the cooperation of the insured." The notice requirement is "material, and of the essence of the contract." [*London Guarantee & Acc. Co. v. Siwy*, 66 N.E. 481, 482 (Ind. Ct. App. 1903)]. The requirement of prompt notice gives the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the accident or loss. This adequate investigation is often frustrated by a delayed notice. **Prejudice to the insurance company's ability to prepare an adequate defense can therefore be presumed by an unreasonable delay in notifying the company about the accident or about the filing of the lawsuit**. This is not in conflict with the public policy theory that the court should seek to protect the innocent third parties from attempts by insurance companies to deny liability for some insignificant failure to notify. The injured party can establish some evidence that prejudice did not occur in the particular situation. Once such evidence is introduced, the question becomes one for the trier of fact to determine whether any prejudice actually existed. The insurance carrier in turn can present evidence in support of its claim of prejudice. Thus, both parties are able to put forth their respective positions in the legal arena.

*Id.* at 265-66 (emphasis added). The Court, thus, held that, in situations of an insured's noncooperation, the insurance company is required to demonstrate actual prejudice. An insured's failure to give prompt notice of a claim, however, raises a presumption of prejudice to the insurance company and that presumption may be rebutted by the insured.

[19] Following *Miller*, our Supreme Court considered related arguments in several opinions. In *Morris v. Econ. Fire & Cas. Co.*, 848 N.E.2d 663 (Ind. 2006), after a

claim was submitted, the insurance company demanded that the insureds produce certain documents and records and submit to an examination under oath, and the insureds refused to do so. On appeal, our Supreme Court clarified that this case did not involve a "cooperation clause"; rather, this case involved an "entirely separate condition that explicitly requires the policyholder to perform specific duties." *Morris*, 848 N.E.2d at 666. The Court held: "While disputes regarding alleged breaches of an insured's duty under a separate 'cooperation clause' may necessitate consideration of resulting prejudice to the insurance company, such **prejudice is not a necessary consideration in determining the enforceability of other insurance policy provisions**." *Id.* (citing *Miller,* 463 N.E.2d at 265). The Court concluded that the insureds "breached the contract as a matter of law."[6] *Id.* at 666-67.

[20] In *Sheehan Construction Co., Inc. v. Continental Casualty Co.*, 938 N.E.2d 685 (Ind. 2010), on rehearing, our Supreme Court again applied *Miller* where the insured failed to notify the insurance company of a claim for almost two years. Because the notice of claim was untimely, prejudice to the insurance company was presumed, and the insured failed to present any evidence rebutting that presumption. *Id*. at 689. Accordingly, the Court held that summary judgment was properly granted to the insurance company. *See also Stacy v. ASI Select Ins. Corp.*, 242 N.E.3d 525, 534 (Ind. Ct. App. 2024) ("Because ASI was prevented

---

[6] The Court noted that the insureds did not "alternatively contend that the breach was immaterial." *Id.* at 667.

from meaningfully investigating the claim due to the unreasonably late notice, Stacy failed in rebutting the presumption of prejudice in favor of ASI.").

[21] Our Supreme Court's holdings, thus, provide: (1) where the post-loss notice of claim is untimely, prejudice to the insurance company is presumed and may be rebutted by the insured; (2) where the insured violates a cooperation clause of the policy, the insurance company must demonstrate actual prejudice; and (3) prejudice is not a necessary consideration in determining the enforceability of other insurance policy provisions.

[22] Here, we are faced with the insured's failure to provide the insurance company with a required **pre-loss** notice of a broken sprinkler system. Garvin argues that we should apply the post-loss actual prejudice requirements as outlined in *Miller*. Insurers, however, argue that this situation is distinguishable from the post-loss situations discussed in *Miller*. Insurers contend that this is not a forfeiture situation where coverage attached and then was lost through a technical failure of some kind; rather, here, Garvin never had coverage for the fire because the PSE's conditions were not met.

[23] Insurers contend that "Indiana courts have a long, consistent history of enforcing unambiguous exclusions as they are written, without considering prejudice." Appellees' Br. p. 37. We agree. Our Supreme Court has held: "Insurance companies are free to limit their liability in a manner not inconsistent with public policy as reflected by case or statutory law. If a plainly expressed exception, exclusion or limitation in an insurance policy is not contrary to public policy, it is entitled to construction and enforcement as

expressed." *Allstate Ins. Co. v. Boles*, 481 N.E.2d 1096, 1098 (Ind. 1985) (internal citation omitted).

[24] Our Supreme Court applied such an exclusion in *Huff v. Travelers Indemnity Co.*, 363 N.E.2d 985 (Ind. 1977). There, a "provision of the policy excluded freezing losses occurring while the home was vacant, unless the insured exercised due diligence in maintaining heat in the building or unless the water systems were drained." *Huff*, 363 N.E.2d at 993. The Court held:

> Conditions requiring that certain precautions be taken against loss are valid and must be complied with in order for the insured to recover under the policy, unless the provision has been waived. The term due diligence implies that the insured must exercise whatever precautions are reasonably necessary to protect against the risk. Whether the precautions taken by Huff constituted due diligence is a factual question left to the fact finder unless no reasonable man could differ as to the result. Clearly reasonable minds could differ as to whether Huff had exercised due diligence with respect to maintaining heat in the building.

*Id.* at 994 (internal citation omitted). The Court, thus, enforced a pre-loss exclusion without requiring the insurance company to demonstrate prejudice.

[25] Our Courts have routinely applied the plain language of such limitations in insurance policies without consideration of prejudice. *See, e.g.*, *Mid-Am. Fire & Cas. Co. v. Shoney's, Inc.*, 843 N.E.2d 548, 552 (Ind. Ct. App. 2006) (enforcing a business pursuit exclusion as written), *trans. denied*; *Williams v. Safe Auto Ins. Co.*, 980 N.E.2d 326, 330 (Ind. Ct. App. 2012) (enforcing an exclusion for unlicensed drivers); *Sheehan Const. Co. v. Cont'l Cas. Co.*, 935 N.E.2d 160, 171

(Ind. 2010) (discussing an exclusion in a construction insurance policy), *opinion adhered to as modified on reh'g*, 938 N.E.2d 685 (Ind. 2010); *Holiday Hosp. Franchising*, 983 N.E.2d at 576 (enforcing an exclusion for acts of molestation or abuse of a person in the hotel's care); *Boles*, 481 N.E.2d at 1098 (answering a certified question and holding that an exclusion "against coverage for injuries sustained by persons related to the insured by blood, marriage, or adoption, residing in his household" was "clear and unambiguous" and did not "contravene public policy"); *Hartford Live Stock Ins. Co. v. Everett*, 169 N.E. 473 (Ind. App. 1930) (directing a verdict for the insurance company where the insurance policy for a racehorse provided that the insurance company would not be liable for the death of the animal if it was subject to an operation of any kind without the written consent of the insurance company, and the racehorse died after a procedure on its leg).

[26] Applying the clear language of the policy in a pre-loss case without requiring the insurance company to demonstrate prejudice is also supported by federal court decisions applying Indiana law. *Frankenmuth Mutual Insurance Co. v. Fun F/X II, Inc.*, 601 F. Supp. 3d 330 (N.D. Ind. 2022) ("*Frankenmuth I*"), and *Frankenmuth Mutual Insurance Co. v. Fun F/X II Inc.*, 61 F.4th 514 (7th Cir. 2023) ("*Frankenmuth II*"), interpreted Indiana law and found for the insurance company in similar circumstances. In *Frankenmuth II,* 61 F.4th 514, an insurance policy exclusion required the insured to notify the insurance company of a suspension or impairment in the building's automatic sprinkler system. It was undisputed that, after the insured learned that the sprinkler system lacked water supply, the insured failed to notify the insurance

company.[7]  The building was later damaged in a fire, and the insurance company denied the insured's claim.  The Seventh Circuit found that the language of the exclusion was unambiguous and that the exclusion barred coverage for the damages.  The Seventh Circuit did not require the insurance company to show prejudice.

Given these decisions, we conclude that when considering these types of pre-loss conditions in an insurance policy: (1) we must apply the clear and unambiguous language of the PSE provision; and (2) prejudice is not a consideration in the analysis.  We conclude that the prejudice analysis applied in *Miller* is not applicable here.  Accordingly, the trial court properly denied Garvin's motion for partial summary judgment on this issue.

## II.  The trial court properly granted Insurers' cross-motion for judgment on the pleadings.

### A.  Standard of Review

Given our determination that Insurers are not required to demonstrate prejudice, we must now determine whether the trial court properly granted Insurers' cross-motion for judgment on the pleadings.  Indiana Trial Rule 12(C) provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  "A motion for

---

[7] In the lower court opinion, the District Court noted that the business owner's conduct deprived the insurance company of its contractual right to its detriment.  The insurance company "could have implemented emergency measures to verify water supply restoration, increased premiums, cancelled the policy, or at least not renewed the policy . . . ."  *Frankenmuth I*, 601 F. Supp. 3d at 343.

judgment on the pleadings under Trial Rule 12(C) tests the sufficiency of a claim or defense presented in the pleadings and should be granted 'only where it is clear from the face of the complaint that under no circumstances could relief be granted.'" *KS&E Sports v. Runnels*, 72 N.E.3d 892, 898 (Ind. 2017) (quoting *Veolia Water Indianapolis, LLC v. Nat'l Trust Ins. Co.*, 3 N.E.3d 1, 5 (Ind. 2014)). We "base our ruling solely on the pleadings," and "we accept as true the material facts alleged in the complaint." *Id.*

[29] A trial court should grant a motion for judgment on the pleadings "only when it is clear from the face of the pleadings that the plaintiff cannot in any way succeed under the operative facts and allegations made therein." *Bayer Corp. v. Leach*, 147 N.E.3d 313, 315 (Ind. 2020). "[W]hen a pleaded claim provides no circumstances in which relief can be granted, there is no need to put either the parties or the court through costly and time-consuming litigation." *Id.* We review a Trial Rule 12(C) ruling "de novo." *KS&E Sports*, 72 N.E.3d at 898.

### B. Garvin violated the clear and unambiguous requirements of the PSE.

[30] The PSE at issue here provided that, "[a]s a condition of this insurance," Garvin was required to maintain an automatic sprinkler system. Appellants' App. Vol. III p. 45. The PSE further provided:

> B. [ ] We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

> 1. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; **or**
>
> 2. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

> If part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

*Id.* at 46 (emphasis added).

[31] Garvin argues that the phrase "maintain . . . in complete working order" as found in Section (B)(2) is ambiguous. *Id.* We need not, however, reach that issue because Section (B) is written in the disjunctive, and Section (B)(1) is clear and unambiguous. Moreover, the relevant facts as alleged in the amended complaint are undisputed. Garvin knew of the suspension or impairment of the automatic sprinkler system. Under the PSE, notification to Insurers was unnecessary if Garvin restored full protection within forty-eight hours, but Garvin was unable to restore the system within forty-eight hours. Accordingly, Garvin was required to notify Insurers of the issues with the sprinkler system, but Garvin did not provide that notice. The PSE provision clearly provided that Insurers would "not pay for loss or damage caused by or resulting from fire if" Garvin failed to comply with the provisions of Section (B). *Id.*

Under these circumstances, it is clear from the face of the pleadings that, under no circumstances, could relief be granted to Garvin. Accordingly, Insurers were entitled to judgment on the pleadings.

## Conclusion

We conclude that the trial court properly denied Garvin's motion for partial summary judgment and properly granted Insurers' cross-motion for judgment on the pleadings. Accordingly, we affirm.

Affirmed.


Foley, J., concurs.
Weissmann, J., concurs in result with separate opinion.


ATTORNEYS FOR APPELLANTS

Gregory M. Gotwald
Mary Claire Tuohy
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana


ATTORNEYS FOR APPELLEES

Kyle A. Lansberry
Lewis Wagner & Trimble
Indianapolis, Indiana

Henry M. Mascia
Rivkin Radler LLP
New York, New York

Michael A. Troisi
Michael P. Welch
Evan H. Krinick
Cheryl F. Korman
Rivkin Radler LLP

Uniondale, New York

David E. Walker
Danielle M. Towe
Walker Wilcox Matousek LLP
Chicago, Illinois

**Weissmann, Judge, concurring in result.**

I agree that, to enforce the PSE exclusion, Insurers were not required to show prejudice from Garvin's failure to timely notify them of the impairment to his warehouse's sprinkler system. I write separately, however, because I do not reach that conclusion by distinguishing between pre-loss and post-loss policy breaches. Rather, I find the operative distinction to be between covenants and conditions precedent, as those terms are traditionally understood in contract law.

Covenants are contractual promises to act or refrain from acting in specified ways. *Covenant*, *Black's Law Dictionary* (12th ed. 2024). They impose legal duties on the promising party to perform accordingly, *id.*, and they grant their beneficiaries the right to pursue remedies if those duties are breached. *Duty*, *Black's Law Dictionary* (12th ed. 2024). Conditions precedent work differently. They specify events that must occur before a promise becomes a covenant. *Condition*, *Black's Law Dictionary* (12th ed. 2024). And until those events occur, the promise does not impose on the promising party a duty to perform. *Id.* Conditions precedent cannot be "breached" in the ordinary sense; they can only go unfulfilled. *See Town of Plainfield v. Paden Eng'g Co.*, 943 N.E.2d 904, 909

(Ind. Ct. App. 2011) ("A condition precedent is . . . a condition that must be fulfilled before the duty to perform a specific obligation arises.").

[37] This case involves a condition precedent. Under the policy, Insurers generally promised to pay Garvin for any fire loss, including a loss that occurred while Garvin knew his warehouse's sprinkler system was impaired. But the PSE exclusion unambiguously conditioned the Insurers' would-be duty to perform on that promise on Garvin notifying Insurers that such an impairment existed. Because Garvin did not fulfill that condition precedent, the promise never became a covenant, and the policy never imposed on Insurers a legal duty to pay for the fire loss.

[38] *Miller v. Dilts*, 463 N.E.2d 257 (Ind.1984), does not change this calculus because the prejudice considerations discussed in that case arose in the context of covenants.[8] The insurer in *Miller* sought to avoid an existing duty to defend its insured against a third-party liability claim based on the insured's prior breach of their duty to notify the insurer of such a claim. Though not set forth in the Court's opinion, "[it] is well established that, when one party to a contract commits the first **material**[9] breach of that contract, it cannot seek to enforce the

---

[8] Although our Supreme Court characterized "the duties to notify and to cooperate" at issue in *Miller* as "**conditions precedent** to [the] insurance company's liability to its insured," the facts of the case and the Court's refence to the insurer's "**liability**," rather than "duty," suggest that the provisions giving rise to those "duties" were covenants. 463 N.E.2d at 260-61 (emphasis added). *But see Morris v. Econ. Fire & Cas. Co.*, 848 N.E.2d 663, 666 (Ind. 2006) (finding prejudice irrelevant where insureds "breached" policy "condition" that "explicitly require[d] policyholder to perform specific duties").

[9] As Garvin correctly observes, the prejudice considerations discussed in *Miller* are "essentially the implementation of the materiality doctrine." Appellants' Br., p. 21; *see also Motorists Mut. Ins. Co. v. Johnson*, 218 N.E.2d 712, 715 (Ind. Ct. App. 1966) ("A technical or inconsequential lack of cooperation has often

provisions of the contract against the other party if that other party breaches the contract at a later date." *TKG Assocs., LLC v. MBG Monmouth, LLC*, 259 N.E.3d 306, 316 (Ind. Ct. App. 2025) (cleaned up; emphasis added). The Court therefore deemed prejudice applicable but found it could be presumed.

[39] Unlike the insurer in *Miller*, the Insurers here do not seek to avoid liability for the subject fire loss by claiming Garvin was the first to materially breach their respective duties under the policy. Insurers claim to have no liability because they never owed Garvin the duty he alleges they breached. The prejudice considerations discussed in *Miller* therefore do not apply.

[40] This case is more akin to *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267 (Ind. 2009). There, an insurer promised to defend its insured against third-party liability claims, and the insured promised to notify the insurer if any accident occurred that could give rise to such a claim. When the insured notified the insurer of a third-party liability claim three years after the accident, the insurer agreed to defend the insured moving forward but declined to indemnify the insured for its pre-notice defense costs. The insured then sued the insurer for breach of contract, arguing that the insurer was required to prove actual prejudice from the delayed notice to avoid its pre-notice duties.

[41] Emphasizing that the insurer was not seeking to avoid its post-notice duty to defend, the *Dreaded* Court ruled that the policy's notice provision "function[ed]

---

been held insufficient to void the policy . . . . Non-cooperation must be material. Prejudice must be shown by insurer.").

as a condition precedent" to the duty to defend, generally. *Id.* at 1271 n.1, 1272-73. The Court therefore found that the insurer's duty to defend did not arise until the insured notified the insurer of the claim. *Id.* The Court further observed that "prejudice is irrelevant" to this inquiry and affirmed the entry of summary judgment in favor of the insurer on the insured's breach of contract claim. *Id.*

[42]  The same logic applies here: because Garvin never fulfilled the condition precedent to Insurer's promise to pay for a fire loss that occurred while Garvin knew his warehouse's sprinkler system was impaired, Insurers' duty to pay for the loss never arose. Prejudice is irrelevant to this inquiry.

[43]  Though other doctrines may address inequities arising from conditions precedent and policy exclusions, those questions are not before us. Garvin raised only whether the prejudice considerations discussed in *Miller* apply to this case, and given its facts, they do not. Because I reach that conclusion without resort to the pre-loss/post-loss distinction the majority draws, I concur in result.[10]

---

[10] I also note that the majority opinion seems to overstate our Supreme Court's stance on the prejudice issue. The majority accurately quotes *Morris v. Econ. Fire & Cas. Co.*, 848 N.E.2d 663, 666 (2006), as stating: "While disputes regarding alleged breaches of an insured's duty under a separate 'cooperation clause' may necessitate consideration of resulting prejudice to the insurance company, such **prejudice is not a necessary consideration in determining the enforceability of other insurance policy provisions**." *Supra* ¶ 19 (emphasis in original). The majority then repeats the bolded language in a summary of the Court's holdings on the issue. *Supra* ¶ 21. But in *Tri-Etch, Inc. v. Cincinnati Ins Co.*, 909 N.E.2d 997 (Ind. 2009), the Court explained that this language from *Morris* "applies to some, but not necessarily all provisions in the policy 'other' than the duty to cooperate." *Id.* at 1005. Thus, to the extent the majority relies on the bolded language as a definitive, all-inclusive proposition of law, I disagree.